IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WILLIS C. MCALLISTER,<br><br>Plaintiff,<br><br>v.<br><br>DISPUTE PREVENTION AND RESOLUTION, INC., *et al.*,<br><br>Defendants. | Case No. 19-cv-00497-DKW-RT<br><br>**ORDER DISMISSING ACTION WITHOUT LEAVE TO AMEND**[1] |

On November 8, 2019, the Court dismissed the civil complaint filed by *pro se* Plaintiff Willis McAllister and granted him leave to file an amended complaint by December 16, 2019. On December 17, 2019, McAllister filed his first amended complaint (FAC), Dkt. No. 19,[2] along with a motion requesting that the Court instruct the U.S. Marshal to execute service of process on Defendants Dispute Prevention and Resolution, Inc.; Keith W. Hunter; and Stefan M. Reinke, Esq. Dkt. No. 20. Because McAllister has failed to correct the deficiencies in his complaint, and otherwise fails to state a claim, this action is DISMISSED WITHOUT LEAVE

---

[1]Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.
[2]The Court cautions McAllister that failure to comply with Court deadlines in the future may result in the automatic dismissal of his case.

TO AMEND.[3]

I. **<u>Screening</u>**

The standard for dismissing a complaint on the grounds that it fails to state a claim is the same under 28 U.S.C. Section 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Jones v. Schwarzenegger*, 723 F. App'x 523, 524 (9th Cir. 2018); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (same standard under Section 1915A). The Court must take the allegations in the complaint as true, excluding those allegations that are merely conclusory, and if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the Court must dismiss the action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court liberally construes a *pro se* Complaint, *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), the Court cannot act as counsel for a *pro se* litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

---

[3]The Court subjects each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and can order the dismissal of any claims it finds "frivolous or malicious"; "fails to state a claim on which relief may be granted"; or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In McAllister's FAC, Dkt. No. 19, he asserts that in an underlying employment discrimination case,[4] the court issued a February 22, 2018 Order, requiring the parties to arbitrate all claims and staying the case, pending the completion of the arbitration. *See id.* at 5, 13; Order, *McAllister v. Hertz Global Holdings, Inc.*, No. 1:17-cv-00146 (D. Haw. Feb. 22, 2018), ECF No. 68 [hereinafter "*Hertz*"]. McAllister alleges that on October 18, 2018, he entered into a contract with Defendants DPR, Hunter, and Reinke, when he sent a signed agreement via email to Kelly Bryant at DPR. *See* Dkt. No. 20 at 7. Under this "contract," McAllister alleges the parties agreed to participate in binding arbitration with Reinke serving as the arbitrator. *Id.*

On July 1, 2019, Defendant Hunter, President of DPR, sent a letter to the parties in the underlying case, informing them that DPR and Reinke had "made the decision to withdraw" and that they would "refund in full all deposits received." Dkt. No. 1-7; *see* Dkt. No. 19 at 11. McAllister then filed a motion in the underlying action, requesting that the court order Reinke and Hunter to (a) show cause why they should not be sanctioned, and (b) explain why they withdrew from the arbitration process. *Hertz*, No. 1:17-cv-146 (D. Haw. July 31, 2019), ECF No. 60. The

---

[4]Complaint, *McAllister v. Hertz Global Holdings, Inc.*, No. 1:17-cv-147 (D. Haw. April 2, 2017), ECF No. 1. In assessing the sufficiency of a complaint, a court may take judicial notice of "undisputed matters of public record," such as "documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2001).

motion was denied, the court reasoned, because it lacked jurisdiction to intervene. Entering Order at 1, *Hertz*, No. 1:17-cv-146 (D. Haw. Aug. 7, 2019), ECF No. 62. McAllister's lawsuit in *Hertz* remains stayed pending the completion of arbitration.

In the instant action, McAllister seeks $1.5 million in damages from Defendants DPR, Hunter, and Reinke. Dkt. No 19 at 22. McAllister avers Defendants breached their contract to arbitrate the dispute when they withdrew from the arbitration process. *Id.* at 11, 15. Because McAllister is African American and Defendants did not offer a reason for withdrawing, McAllister maintains that Defendants withdrew "because of his race." *Id.* McAllister asserts claims for breach of contract in violation of 28 U.S.C. Section 1332; violation of 42 U.S.C. Section 1981;[5] and conspiracy to violate civil rights in violation of 42 U.S.C. Section 1985. The FAC, however, is plagued by the same defects previously identified by the Court, Dkt. No. 13; that is, McAllister's "bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).

A.  **Breach of Contract**

McAllister has no claim under 28 U.S.C. Section 1332 because that statute

---

[5] Although McAllister asserts two Section 1981 claims under different captions in Counts II and III, in each claim McAllister makes substantially the same allegations and asserts the same claim: That his purported contractual relationship with DPR was impaired because of his race. *Cf.* 42 U.S.C. § 1981(b).

does not establish substantive rights or any cause of action; Section 1332 merely grants federal courts the power to exercise jurisdiction over state law claims (*e.g.*, breach of contract claims) between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interests and costs. *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552–53 (2005). To sustain a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract;[6] (2) plaintiff's performance; (3) defendant's failure to perform an obligation under the contract; and (4) damages as a result of failure to perform. *See Calipjo v. Purdy*, 439 P.3d 218, 225 (Haw. 2019). The FAC founders on elements one, three and four.

First, although McAllister alleges the existence of a signed contract with Defendants by virtue of his October 18, 2018 email, there is not an enforceable contract because nothing in the FAC suggests that the purported contract was supported by consideration. *Calipjo*, 439 P.3d at 233; *Douglass v. Pflueger Haw., Inc.*, 135 P.3d 129, 143 (Haw. 2006) (defining consideration).

Second, as in McAllister's original complaint, the FAC does not contain facts showing that Defendants had an obligation under the terms of the contract to arbitrate the case, much less that, according to the terms of the agreement, Defendants

---

[6]An enforceable contract requires: "(1) capacity to enter the contract, (2) offer, (3) acceptance, and (4) consideration." *Calipjo v. Purdy*, 439 P.3d 218, 233 (Haw. 2019).

breached their obligation. *See Johnson v. Fed. Home Loan Mortg. Corp.*,793 F.3d 1005, 1007 (9th Cir. 2015) (state law breach of contract claim properly dismissed because complaint did not allege any facts that showed defendant had a contractual duty to service loan). It is telling that, for the second time, the terms of any agreement, and the agreement itself, are absent from the FAC.

Third, the FAC does not identify damages that McAllister incurred as a result of Defendants' alleged withdrawal from the arbitration process. Defendants agreed to reimburse any deposits made to the parties when they stated their intent to withdraw, there can hardly be a serious dispute that Defendants are not the only arbitrators locally available, and there has been no consequence in *Hertz* as a result of the arbitration delay. The court in that case continues to hold the matter in abeyance pending completion of the arbitration process.

For the foregoing reasons, McAllister has again failed to state a claim for breach of contract.

### B. Claim Under 42 U.S.C. Section 1981

Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006) (quoting 42 U.S.C. Section 1981(a)). "Any claim brought under § 1981 . . . must initially

identify an impaired contractual relationship under which the plaintiff has rights." *Id*. at 476 (internal quotation omitted). A plaintiff "cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes to make or enforce." *Id*. at 479. This claim suffers from two defects.

First, as explained above, McAllister has not identified the terms of any contract that guaranteed (or would have guaranteed) him the *right* to have his claims arbitrated by Defendants. *See Metoyer v. Chassman*, 504 F.3d 919, 930–31 (9th Cir. 2007) (no discriminatory breach of contract claim under Section 1981 because defendant had no "contractual obligation to confirm [plaintiff]" to a particular position). The fact that the *Hertz* court found there was a valid arbitration agreement between McAllister and certain defendants in *Hertz*, Order at 4–6, *Hertz*, No. 1:17-cv-146 (D. Haw. Feb. 22, 2018), ECF No. 68, does not mean that DPR and its associates were contractually obligated to arbitrate McAllister's claims. *See* Dkt. No. 19 at 13, 17.

Second, McAllister's Section 1981 claim fails for the independent reason that he has not alleged facts indicative of purposeful discrimination. Section 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania.*, 458 U.S. 375, 391 (1982); *Doe v. Kamehameha Schools/Bernice*

*Pauahi Bishop Estate*, 470 F.3d 827, 837–39 (9th Cir. 2006). The Court previously advised McAllister that he "must therefore plead facts showing 'purposeful discrimination,' *i.e.*, that Defendants withdrew from serving as the arbitrator because of McAllister's race." Dkt. No. 13 at 8. The FAC, however, "does not contain any factual allegation sufficient to plausibly suggest [Defendants'] discriminatory state of mind." *Iqbal*, 556 U.S. at 683; *McZeal v. JPMorgan Chase Bank, N.A.*, 735 F. App'x 91, 917 (9th Cir. 2018) (holding plaintiff "failed to state a claim under 42 U.S.C. § 1981 because he failed to allege intentional discrimination on the basis of race.").

In the FAC, McAllister simply states that Defendants "breached a contractual relationship . . . *because of his race*." Dkt. No. 19 at 11, 15 (emphasis added). But that is "conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 678, 681. The same goes for McAllister's assertion that Defendants also engaged in "disparate treatment" of "non-blacks" who "participated in past contractual relationships" with DPR, Dkt. No. 19 at 11, 15, because there is no further "factual content to 'nudg[e]' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570). McAllister's vague references to "actions" and "silence" by Defendants, coupled with his bald assertion of "additional 'Incidents' [of] disparate treatment,"

8

do nothing to advance his claim. Dkt. No. 19 at 12, 16.

The only specific instance of racially disparate treatment McAllister identifies is his allegation that Defendants denied McAllister the use of their conference room to video record and depose the *Hertz* defendants, whereas "non-blacks" were allegedly afforded this privilege. Dkt. No. 20 at 14.[7] But that does not raise an inference of intentional discrimination with respect to Defendants' willingness to arbitrate the claims in *Hertz*. *See Nat'l Ass'n of African American-Owned Media v. Charter Communs., Inc.*, 915 F.3d 617, 626–27 (9th Cir. 2019) ("Corporate red tape, inconsistent decision-making among network leadership, and even boorish executives are not themselves necessarily indicative of discrimination.").

Lastly, McAllister alleges Defendants engaged in "malicious, intentionally racial discrimination" because they "fail[ed] to follow the same standard operating procedures" and "contractual party treatment" Defendants "afford non-blacks." Dkt. No. 19 at 12. McAllister's averment is not only vague and conclusory but McAllister "effectively seek[s] to challenge the decisional act of an arbitrator or

---

[7]McAllister also alleges that the "outrageous, egregious, intentional racist behavior" of "DTG Operations, Inc., George Choe, Snelling, and Lisa Lien, . . . is further amplified, in their refusals to accept any of the 'very, very, very, very reasonable' settlement offers and/or monetary demands, advanced by [McAllister], to settle his meritorious claims, throughout this litigation process, when compared with past settlement made with other civil rights [p]laintiffs." Dkt. No. 19 at 18 (emphasis omitted). But this allegation concerns the defendants in the underlying dispute in *Hertz*, No. 17-cv-146, and therefore it is irrelevant to the issue of whether DPR, Hunter, and Reinke, engaged in purposeful discrimination.

9

arbitration panel" acting "within the scope of their duties and within their jurisdiction." *See Sacks v. Dietrich*, 663 F.3d 1065, 1069 (9th Cir. 2011). Any such claim is therefore barred by arbitral immunity. *Id.*

Accordingly, McAllister has failed to state a claim under Section 1981.

### C. Civil Conspiracy Under 42 U.S.C. Section 1985

In Count IV, McAllister alleges that Defendants conspired to deprive him of his civil rights in violation of 42 U.S.C. Section 1985(1) and (2). Dkt. No. 19 at 19. But McAllister's allegations do not involve a conspiracy "to interfere with the performance of federal duties by federal officers," *Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985) (noting scope of Section 1985(1)); nor do McAllister's averments relate to a conspiracy "to deter a witness by force, intimidation, or threat from attending federal court or testifying freely in a matter there pending," *see Rutledge v. Arizona Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988) (listing elements of Section 1985(2) claim).[8] Thus, McAllister's Section 1985 claim (if any) is properly analyzed as asserting a conspiracy to deny McAllister equal

---

[8]*See also Portman v. Cty. of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993) (noting the causes of action covered by Section 1985(2)). Despite McAllister's reading of Section 1985, the mere fact that Defendants withdrew from the arbitration process does not mean that they interfered with the court's order in *Hertz* requiring the parties to engage in arbitration, and it certainly does not mean McAllister was denied access to the federal courts or "quasi judicial [*sic*] arbitration proceedings." *Cf.* Dkt. No. 19 at 20. Indeed, when the *Hertz* court denied McAllister's motion for sanctions against DPR and its associates and refused to lift the stay, the court observed that "it has not been shown that there is no other arbitrator available to the parties." Order, *Hertz*, No. 1:17-cv-00146 (D. Haw. Aug. 7, 2019), ECF No. 62.

protection of the laws in violation of the first clause of Section 1985(3). *See Bretz*, 773 F.2d at 1027 n.3 (outlining the discrete substantive subclauses of Section 1985).

But any claim under Section 1985(3) fails for two reasons. *Fazaga v. FBI*, 916 F.3d 1202, 1245 (9th Cir. 2019) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983)) (listing four elements required for conspiracy claim under Section 1985(3)). First, McAllister has not alleged *facts* to support the inference "that the [D]efendants conspired—that is, reached an agreement—with one another." *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) ("[T]he plaintiff must state specific facts to support the existence of the claimed conspiracy." (citation omitted)). The letter DPR issued to notify the parties in *Hertz* that it was withdrawing from the arbitration process, Dkt. No. 1-7, is not an agreement between co-conspirators.

Second, McAllister has not alleged facts to plausibly suggest that Defendants' withdrawal from the arbitration was motivated by discriminatory animus. To state a claim under Section 1985(3), "a plaintiff must show, *inter alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' . . . and (2) that the conspiracy' aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'"

11

*See Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993)). "'**Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences**. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Bray*, 506 U.S. at 271–72 (emphasis added) (quoting *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)); *Iqbal*, 556 U. at 676–77. As noted, however, the FAC "does not contain any factual allegation sufficient to plausibly suggest [Defendants'] discriminatory state of mind." *Iqbal*, 556 U.S. at 683.

Put simply, the FAC boils down to no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Because the FAC fails to allege facts supporting a claim under any principle of law, this action is DISMISSED. McAllister's motion to effectuate service of process, Dkt. No. 20, is therefore moot and denied on that basis.

### D. Leave to Amend is Denied

A district court, in its discretion, may deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The FAC suffers from the same defects the Court identified in McAllister's original complaint; namely, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The fact that McAllister has persisted in relying on conclusory statements is "a strong indication that [McAllister has] no additional facts to plead" without running afoul of Fed.R.Civ.P. 11. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citation omitted). Because it is clear that McAllister has "made [his] best case and ha[s] been found wanting," *id.*, this case is DISMISSED WITHOUT LEAVE TO AMEND.

## II. Conclusion

McAllister's First Amended Complaint, Dkt. No. 19, is DISMISSED WITHOUT LEAVE TO AMEND, and McAllister's motion to effectuate service of process, Dkt. No. 20, is DENIED as moot. This action is DISMISSED WITHOUT PREJUDICE.

The Clerk of Court is DIRECTED to close this case.

IT IS SO ORDERED.

Dated: January 7, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Willis C. McAllister v. Dispute Prevention and Resolution, Inc., et al.*, Civil No. 19-cv-00497-DKW-RT; **ORDER DISMISSING ACTION WITHOUT LEAVE TO AMEND**